McDONALD, Chief Justice.
Under the provisions of article V, section 9, Florida Constitution, it is the responsibility of the Supreme Court to determine the necessity of increasing or decreasing the number of judges required to fulfill the judicial needs of Florida. To this end we have conducted an analysis of case filings and have considered other pertinent criteria. We discern and certify an immediate need for additional circuit and county judges as follows:
Fiscal Year 1987-88
Circuit Circuit County
First Judicial Circuit 1
Second Judicial Circuit 1-Leon
Fifth Judicial Circuit 1
Sixth Judicial Circuit 1 1-Pinellas
Seventh Judicial Circuit 1-Volusia
Eighth Judicial Circuit 1-Alachua
Ninth Judicial Circuit 1
Eleventh Judicial Circuit 1
Thirteenth Judicial Circuit 2
Fifteenth Judicial Circuit 2
Eighteenth Judicial Circuit 1-Brevard
Twentieth Judicial Circuit 1
This certification follows a request for sixteen circuit and ten county court judge-ships for fiscal year 1987-1988. We do not address, or certify, in this opinion the need for judges in 1988-1989, but we anticipate a need for additional judges for that year. For purposes of projection, we believe that six district court of appeal, ten circuit, and five county judges will likely be needed in the second year.
This Court enacted Florida Rule of Judicial Administration 2.035 to delineate the general criteria to be used in assessing the *324 need for additional judgeships.* We have determined that the most consistent and reliable factor to be utilized in determining the needs for judgeships is total case filings per judge. A reliable state reporting system of case filings has now been developed. From this source we have received records of actual filings; our staff has developed a reliable and proven capability of projecting case filings for the next year. The projected filings per judge for twelve of the twenty circuits exceed the statewide average of 1,864 cases per circuit judge, which the Court regards as the level beyond which there is a presumptive need for additional judicial manpower. Legislative authorization of the ten circuit court judge-ships requested will still leave five of the eight circuits for which judgeships are certified with projected filings per judge ratios that exceed the statewide average. Three of the eight circuits for which additional judgeships are requested, the Fifth, Thirteenth and Fifteenth, will have in excess of 2,000 filings per judge even if the requested judges are authorized. All but one of the requested circuit judgeships are justified on the basis of projected filings per judge and are substantiated by the other criteria considered by the Court.
The Eleventh Judicial Circuit’s request is justified by a number of factors other than total projected filings. Data resulting from an evaluation of weighted projected filings, by case type, and the use of statistical techniques to identify trends in the growth of judicial manpower requirements for that circuit are much stronger indicators of need for more judges. The need is particularly manifest in the criminal divisions of the circuit court. The filings data for circuit criminal cases includes a relatively low percentage of worthless check cases. These cases account for a greater share of the total criminal filings in other jurisdictions, making the Eleventh Circuit’s criminal caseload more demanding of judicial time. Circuit criminal filings in Dade County generally involve a higher number of counts per defendant than in other counties, and a large number of capital cases are being filed in that county. Many cases in Dade County are time consuming because of the need to use interpreters in court proceedings. It is estimated that close to 100,000 translations occurred in the last year. Finally, approximately 700 days of retired judge time and over 400 days of county judge time were committed to circuit level work in Dade County in fiscal year 1985-86. These factors and the difficulties inherent in managing the largest and most urban of Florida’s courts clearly support the request for at least one additional judge for the Eleventh Judicial Circuit.
As with circuit judgeships, the primary criterion the Court used in assessing the need for additional county judgeships was total filings per judge. The Court also reviewed adjusted filing figures (civil, criminal, and DWI cases, plus civil traffic infractions in which hearings occurred) and filings data weighted to reflect variable work requirements for the different types of cases. It is the Court’s position that the requested county judgeships are priorities based on these data alone, although other factors justify the certification in each instance.
*325 This Court recognizes that it is imperative that the court system be managed efficiently and that available judicial time be well utilized. The primary responsibility for this lies in the hands of the respective chief judges. Suggestions and some direction come from this Court.
Florida’s rapid population growth and an ever escalating number of case filings, both criminal and civil, continually place an increased demand for judicial services on the court system. Notwithstanding our efforts to make the judicial system more efficient, the need for additional judges does now and will continue to exist. Accordingly, we certify the need for ten circuit and five county judgeships as a critical funding priority for the state courts system for fiscal year 1987-88.
OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.

 The criteria to be considered include:
(1) Case load statistics based upon data supplied to the State Courts Administrator by the clerks of the circuit courts.
(2) Growth, nature, and projections of population within a particular court’s jurisdiction.
(3) Number of attorneys within a particular court’s jurisdiction.
(4) The use and availability of retired judges to serve on a particular court.
(5) The presence of non-lawyer county court judges within a particular circuit who by law cannot be assigned to assist with the circuit court case load.
(6) The geographic size of a circuit, including travel times between courthouses in a particular jurisdiction.
(7) The presence of state facilities and institutions in a particular jurisdiction.
(8) Law enforcement activities in the court’s jurisdiction, including any substantial commitment of additional resources for state attorneys, public defenders, and local law enforcement.
(9) Time since the last new judgeship was authorized for the particular jurisdiction.
(10) The nature and complexity of cases coming before the courts in the jurisdiction.
(11) Prior certifications which were not authorized by the legislature.