McDONALD, Chief Judge.
Under the provisions of article V, section 9, Florida Constitution, it is the responsibility of the Supreme Court to determine the necessity for increasing or decreasing the number of judges required to fulfill the judicial needs of Florida. To this end we have analyzed case filings and have considered other pertinent criteria.
We first discuss the district courts of appeal because, in our judgment, while the need exists for all certified, the most acute need lies in the overburdened district courts of appeal. We belatedly certified a need last year, In re Certification of Additional Judicial Manpower, 507 So.2d 595 (Fla.1987); this year the need is further exacerbated. Despite heroic efforts by the district court judges as demonstrated by a higher disposition rate, the number of pending cases (case inventory) has substantially increased. No district court of appeal judges have been added since 1982. Since that time, total filings in those courts have increased by twenty-five percent.
The chief judges of the district courts have made the following requests for additional judges: First — 2; second — 3; third— 1; fourth — 3; and fifth — 1. We find an acute need for at least six, in this order: Fourth — 1; fifth — 1; second — 1; third — 1; fourth — 1; second — 1. None of the additional requests are unreasonable and, based on national standards, are warranted; our certification is based on critical needs and not the ideal. For example, the national recommendation is for no more than 250 case filings per judge per year; ours exceed 325 case filings per judge.
We now turn our attention to circuit and county judges. In 1987 we certified the need for ten additional circuit and five additional county judges. In re Certification of Judicial Manpower, 503 So.2d 323 (Fla.1987). The legislature honored this certification and fully funded them. These positions became effective January 1, 1988 and are now fully operational and a great aid. Nevertheless, the demands on the trial court system continue to grow. Florida’s growth is reflected in additional court filings of all kinds requiring additional judges despite our successful efforts of higher case production, the use of alternatives, and the like.
*117 This Court enacted Florida Rule of Judicial Administration 2.035 to delineate the general criteria to be used in assessing the need for additional judgeships. We have determined that the most consistent and reliable factor is total case filings per judge. Reliable systems for reporting and projecting case filings have been developed for both the trial and appellate courts. These data are supplemented by other case statistics and data on noncase-related criteria, referenced in rule 2.035. Further, the Court looked closely at the mix and relative complexity of the case loads of the trial courts, as well as their historical reliance on retired judges and, in the case of the circuit courts, use of county judges on temporary assignment.
Using forecasts of 1988 filings, all of the circuit courts for which we have certified the need for new judges are expected to have filings per judge ratios in excess of the statewide average. Of the six circuits for which new judges are certified, all but the Eighteenth Judicial Circuit rank among the highest, when filings are evaluated in terms of the differential demands of civil, criminal, juvenile, and probate matters. The Eighteenth Judicial Circuit ranks fifth among the circuits when filings are adjusted by subtracting the number of worthless check cases, simplified dissolutions, and probate, guardianship, and trust matters, which generally do not require significant judicial time. Moreover, the county judges in Brevard County, where most of the circuit judges are resident, have one of the highest case loads among Florida’s county courts and are not as available to assist at the circuit level as are other county judges.
Two courts for which no certification is made, the Fifth and Fourteenth Judicial Circuits, rank high on several workload criteria. The Fifth Circuit did not request an additional circuit judge, although it appears likely that one will be required in the near future. That court benefited from a legislative appropriation for trial court law clerks, who have provided some assistance to the judges in that circuit. The Fifth Judicial Circuit has also effectively utilized the services of county judges on temporary assignment at the circuit level.
The Fourteenth Circuit has fewer circuit judges than most. While the workload pressures on the six judges in that circuit are significant, the effect of adding a new judge would be to reduce individual judge case loads substantially. This Court is of the opinion that the filings per judge threshold for adding a new judge should, therefore, be somewhat higher in the Fourteenth Circuit than for other circuits. The Fourteenth Circuit now has a new county judge who can assist in circuit court. Retired judges are also available to assist the sitting judges.
The certification for new circuit judge-ships is viewed by this Court as very conservative. Six courts, for which no certification is made, will have workloads in the range of 1,800 to 1,950 filings per judge in 1988. These courts may also need relief in the form of additional judicial manpower. It is the intent of this Court to provide relief and assistance through cross-assignment of judges and the assignment of retired judges, to ensure that case loads for the judges are kept under control until such time as new judges may be certified and authorized.
Based on our statistical analysis of both numbers and the nature of filings, it is clear that a need exists, and we so certify, for circuit judges for the following circuits: Seventh — 1; eleventh — 2; twelfth — 2; fifteenth — 1; eighteenth — 1. Of these, the most important is for the first additional judge in the Twelfth Circuit. A certification for this circuit should have been made in 1987, but was inadvertently left out.
We also certify a need for one additional circuit judge in Broward County. The case filings indicate a strong need for another county judge. We note, however, that one county judge has devoted the majority of his time doing circuit court work (juvenile). A circuit judge should be appointed to perform circuit court work, thus allowing the county judge to ease the work load of the county court.
We certify a need for an additional circuit judge in the Sixth Judicial Circuit. From a statistical viewpoint, the need here *118 is borderline. However, it is our understanding that this circuit has agreed to become involved in a career criminal program which will dictate increased use of a judge in the criminal division. Should this develop, then this circuit clearly is in need of one additional judge and hence we certify a need conditioned upon the circuit’s participation in the above plan.
The Fourth Judicial Circuit has also requested additional circuit judgeships. Although the growth of Clay County has required the moving of a judge previously assigned to Duval County to Clay, the statistics fail to meet our threshold request. Nevertheless, it, too, is targeted for the aforementioned career criminal pilot project. For it to participate, it will require an additional judgeship. Hence, we conditionally certify a need for the Fourth Circuit.
In reference to county judges, twelve have been requested. The needs are apparent for Broward and Lee Counties. Because we are certifying a need for a circuit judge in Broward (and the statistics do not justify a need for both a circuit and a county judge) we decline to certify this county judge. The certification for Lee should be granted because the need is apparent.
To recapitulate, we certify an immediate need for the following judges:
Second District Court of Appeal 2
Third District Court of Appeal 1
Fourth District Court of Appeal 2
Fifth District Court of Appeal 1
Seventh Judicial Circuit tH
Eleventh Judicial Circuit C*3
Twelfth Judicial Circuit (M
Fifteenth Judicial Circuit t — I
Seventeenth Judicial Circuit tH
Eighteenth Judicial Circuit H
Lee County Court 1
Provisional certification:
Sixth Judicial Circuit 1
Fourth Judicial Circuit 1
These requests are a “bare bones” minimum. In our judgment, it is essential that these positions be authorized and funded to enable the judiciary to fulfill its responsibilities.
OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs specially with an opinion, in which SHAW, J., concurs.